Arthur A. REYES

v.

W. B. (Bill) HAUCK, Sheriff, Bexar County, Texas, et al.

Civ. A. No. SA72CA11.

United States District Court,
W. D. Texas,
San Antonio Division.

March 9, 1972.

Arthur A. Reyes, pro se.

Ted Butler, Criminal Dist. Atty., Donald H. Smith, Asst. Criminal Dist. Atty., for defendants.

## ORDER DISMISSING CAUSE

SPEARS, Chief Judge.

This case, brought pursuant to Title 42 U.S.C. § 1983, is an excellent example of the way in which the already over-burdened federal courts are being abused by some jail inmates, whose irresponsible attempts to raise every pica-yunish and/or imagined complaint to the level of the violation of a constitutional right, serve only to consume time and effort that should be available for the consideration of meritorious causes.

Petitioner alleges that the rules and regulations of the Bexar County Jail require that he tell a guard what is wrong with him before his name can be placed on the doctor's list. As a consequence, he contends that the rules and regulations constitute cruel and unusual punishment, in that they add punitive measures to those already legally meted out by the courts. In his own words, "the sole question presented by the complaint is whether penal authorities may promulgate rules and regulations, which if proven true, would denie [sic] inmates medical attention at the whim and caprice of penal authorities, none of whom are qualified in any way to diagnose or prescribe medical treatment in any way."

According to petitioner, on December 30, 1971, he requested a guard to place his name on the doctor's list, but this request was refused, because, according to him, he declined to discuss his illness with anyone except the doctor or nurse in charge of the hospital. He says that he had been advised that he couldn't talk to anyone unless he told the guard what was wrong with him.

The respondents have replied under oath, setting out in detail the procedures followed in handling the medical complaints of prisoners. Affidavits of the jail administrator [1] and the medical doctor [2] reflect that inquiries as to the

1. This affidavit stated as follows:

"Prisoners in the Bexar County Jail that feel the need for medical attention make their desire known to the Jail Guards working on their floor at any time day or night, if no emergency exists the guard places the man's name on the doctor's list. In order to assist the medical staff expedite medical needs the guard inquires of the complaining prisoner the nature of his complaint. If an emergency exists the prisoner is immediately brought to the central cage area and the medical staff notified. The prisoner may or may not be taken to the emergency room of the Robert B. Green Hospital at any time, day or night, depending on his response and the judgment of the medical staff. If an emergency illness does arise when no medical personnell [sic] are in the jail the Captain on duty orders the prisoner taken immediately to the Robert B. Green hospital emergency room for evaluation and treatment.

"Each day a medical doctor is at the jail and accompanied by the nurse or medic he goes to each floor and from the afore-mentioned list that has been prepared on that floor, he sees each and every prisoner that has a medical complaint. At this time the doctor diagnoses and prescribes what is to be done with the prisoner or what medical action is to be administered by the nursing staff. If for any reason the doctor wants to make a further examination he may order the prisoner brought to the jail hospital office.

"The attending physician may order a prisoner taken to the Robert B. Green or Bexar County Hospital for further tests and evaluation. If the doctor so orders then the nursing staff of the jail notifies the proper Sheriffs Office officers of this order. The prisoner is then transported to the emergency room of the Robert B. Green or Bexar County Hospital, after the medical staff at the hospital completes the examination the prisoner may be admitted to hospital care or returned to the jail. The hospital staff may prescribe medication and may or may not send a slip by the officers showing the dates of future appointments at the hospital for this particular prisoner.

"All hospital appointments are at the discretion of the hospital staff and are made by them and the Sheriff's Office complies with their desires as to date, time, place of future appointments or examinations."

2. In his affidavit the doctor said:

Each day, seven (7) days a week, a sick call is carried out on each floor by a member of the attending Medical Staff, accompanied by a nurse or medic. At this time any prisoner who has made any medical complaint known to the guards will be seen by the doctor on the

nature of any complaints are made by the guards in order to assist the staff in expediting the medical needs of the prisoners. In this way, if an emergency exists with respect to any prisoner, he can be immediately brought to the central cage area and the medical staff notified. There is no suggestion anywhere in the procedure that a prisoner will not be given medical attention unless he tells the guard what is wrong with him, and the existence of any rule to that effect is categorically denied in the answer sworn to by the sheriff, the chief jailer, the guard captain, and the jail guard to whom petitioner says he directed the request for medical services. While petitioner ·vaguely refers to his "illness", and infers that he may not have received treatment, there is no showing that he was ever denied any essential medical treatment, or that his health was placed in jeopardy. On the contrary, the medical records reflect that between February 26, 1971 and January 7, 1972, petitioner's complaints received attention from medical authorities connected with the jail on at least 24 occasions, and the accuracy of these records has not been challenged. See Weaver v. Beto, 429 F. 2d 505 (5th Cir. 1970).

 Under the circumstances, therefore, this Court finds: (1) that petitioner has wholly failed to demonstrate that there is any rule or regulation in existence at the Bexar County Jail which denies to him, or to any other inmate, medical attention at the whim and caprice of penal authorities; and (2) that there is nothing about petitioner's alleged conversation with the guard, which, even if true, would raise his complaint to the level of cruel and unusual punishment in violation of the Eighth Amendment. Martinez v. Mancusi, 443 F.2d 921 (2nd Cir. 1970). Federal Courts will not interfere with the conduct, management and disciplinary control of jails, except in extreme cases, and there is certainly nothing in this case to suggest the possibility of any "conduct that shocks the conscience". See Church v. Hegstrom, 416 F.2d 449 (2nd Cir. 1969). Also see: Weaver v. Beto, 429 F.2d 505 (5th Cir. 1970); and Campbell v. Wainwright, 416 F.2d 949 (5th Cir. 1969).

Finding that the pleadings and briefs, together with the files and records herein, conclusively show that there has been no violation of petitioner's constitutional rights, and that there is no merit to the complaint for declaratory, injunctive or monetary relief, this cause is hereby dismissed.

---

floor. Usually a brief examination will disclose the nature of the illness and appropriate medication prescribed. If more complicated problems are felt to exist the patient can be taken to the Doctor's Office for a more complete examination or minor surgical procedures. If the attending physician feels the particular problem justifies more definitive diagnosis or treatment the prisoner may be ordered to the Bexar County or Robert B. Green Hospital, at any time, day or night. Once the patient has been evaluated there he may be admitted or medication prescribed and further appointments are taken to the appropriate clinic or emergency by the guards. If emergency conditions arise when neither a doctor or medic is in the jail the patient is taken directly to the Robert B. Green or Bexar County Hospital for a medical examination.